1 | PAUL W. REIDL (State Bar No. 155221)
Law Office of Paul W. Reidl
2 | Second Floor
25 Pinehurst Lane
3 | Half Moon Bay, CA 94019
(650) 560-8530
4 | Email: reidl@sbcglobal.net

5 | *Attorney for Appellation*
*Trading Company, LLC*

6 |

7 | **UNITED STATES DISTRICT COURT**

8 | **NORTHERN DISTRICT OF CALIFORNIA**

9 |

10 | **APPELLATION TRADING**     Case No.
**COMPANY, LLC,**
11 |     Plaintiff,
12 |     v.                 **COMPLAINT FOR DECLARATORY RELIEF**
13 | **SALVESTRIN WINE CO., LLC,**
14 |     Defendant.

15 |     Plaintiff Appellation Trading Company, LLC, for its Complaint against Defendant Salvestrin

16 | Wine Co., LLC, alleges the following on information and belief:

17 | **JURISDICTION AND VENUE**

18 |     1.    This is an action for declaratory relief under the Lanham Act, 15 U.S. C. §1051 *et*

19 | *seq.,* and the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.* This Court has subject matter

20 | jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338 (a) and 2201 (a), and 15 U.S.C. § 1121. It has personal

21 | jurisdiction because both parties reside in this District. Venue properly lies within this District pursuant

22 | to 28 U.S.C. §1391. This is an intellectual property action and therefore should be assigned on a

23 | district-wide basis per Local Civil Rule 3-2(c).

24 |

1

**THE PARTIES**

2      3.     Plaintiff Appellation Trading Company, LLC, ("ATC") is a California limited liability

3 corporation with its principal place of business in Napa, California. ATC is in the business of producing

4 and distributing wines in the United States, California and this District.

5      4.     Defendant Salvestrin Wine Co., LLC ("Salvestrin") is a California limited liability

6 corporation with its principal place of business in St. Helena, California.  Salvestrin is in the business

7 of producing and distributing wines in the United States, California and this District.

8

**FACTUAL BACKGROUND**

9      5.     ATC produces a wine called "Cult."  This wine is made from grapes grown in Napa

10 Valley.  The term "Cult" was first used as a brand name on a Napa Valley wine label in or about January

11 2010 by the Snider Family d/b/a Beau Vigne in Yountville, California. It has been used on wine

12 continuously since that time. In August 2018, the Snider Family sold their vineyards and winery to

13 Summit Vineyards Estate, LLC ("Summit").

14     6.     In or about July 2011, Salvestrin began using a "Cult" designation on a Napa Valley

15 wine.  It sent a demand letter to the Snider Family in which it demanded that they cease and desist

16 using their "Cult" brand name.  They refused to do so.  Salvestrin never followed-up on its threat to

17 sue, and the Sniders (and later Summit) continued selling wine bearing a "Cult" brand name without

18 any further objection from Salvestrin.  Although the acquisition by Summit was widely publicized in

19 the trade press and local print media, Salvestrin did not send a demand letter to the new owners.

20     7.     On November 20, 2019, ATC purchased the "Cult" label, trade dress, and inventory

21 from Summit.  It continued selling wine labeled with the "Cult" brand name and is still doing so today.

22     6.     Although this acquisition was widely publicized in the trade press and local print media,

23 Salvestrin did not immediately send a demand letter to ATC.  It wasn't until February 2021, over a

24

1   decade after the original demand letter to the Snider Family, when Salvestrin's trademark counsel sent

2   a demand letter to ATC claiming that its use of the "Cult" brand name on wine constituted trademark

3   infringement and unfair competition.  He demanded that ATC immediately cease and desist sales of

4   the label or face Federal Court litigation.  He claimed that Salvestrin first used the term on wine in

5   2009, long before the Snider Family.  In a lengthy written response, ATC explained why the claim was

6   groundless and it refused to accede to the demand.

7       7.      Salvestrin responded to ATC's letter by sending a second letter, this time from a

8   trademark litigator in Silicon Valley.  She reiterated Salvestrin's demand and again threated ATC with

9   court action if it did not accede to it.  Again, ATC provided a lengthy response explaining why it would

10  not accede to the demand.

11      8.      Last week, the principal of ATC reached out to his counterpart at Salvestrin and

12  confirmed that Salvestrin still intended to sue over ATC's use of a "Cult" brand name for wine.

13      9.      Not all brand names can function as trademarks.  A term that describes a characteristic

14  of wine does not function as a trademark and cannot be owned by a single producer unless it has

15  achieved secondary meaning, i.e., the term has become uniquely and singularly associated with that

16  producer as a result of substantially exclusive use, extensive sales, and wide-spread promotional

17  activities.

18      10.     The term "cult" is a descriptive term for a type of wine.  A "cult" wine is a wine for

19  which collectors, investors and enthusiastic consumers will pay high prices.  Salvestrin has admitted

20  this multiple times in its filings before the United States Patent and Trademark Office.  As a descriptive

21  term for wine, "Cult" does not inherently function as a trademark.

22      11.     Although Salvestrin has used the brand name "Cult" for many years, so has ATC

23  through its predecessors.  The term has not acquired distinctiveness and does not have secondary

24

1   meaning.  Salvestrin does not have the substantial exclusivity of use required to establish secondary

2   meaning.   It also does not have sufficient advertising, promotional activities, and sales to have

3   established single-source identification with consumers throughout the country.

4         12.     Salvestrin received a trademark registration for "Cult" in June 2020.  In its application,

5   Salvestrin again admitted that "Cult" was descriptive for wine because it filed the application based on

6   a claim of acquired distinctiveness (secondary meaning) through five years of (allegedly) substantially

7   exclusive use.  At the time it filed this application, however, Salvestrin knew that it did not have

8   substantially exclusive use because the Snider Family, Summit, and its successor-in-interest, ATC, had

9   been using a "Cult" brand name for over a decade.  Nevertheless, it told the Patent and Trademark

10  Office (PTO) that it was the "exclusive" user of a "Cult" label for wine.  This statement was false and

11  Salvestrin knew it.  The PTO relied on this false statement in issuing the registration.

12        13.     Although Salvestrin claims to have first used the "Cult" brand name in commerce in

13  2009, it did not receive a Certificate of Label Approval ("COLA") for a "Cult" label until July 2011.

14  The Federal Alcohol Administration Act makes it illegal to bottle or sell wine without first obtaining

15  COLA.  Thus, any sales of a "Cult" label prior to July 2011 were not good use in commerce under the

16  Lanham Act.  The first lawful user was the Snider Family.

17                             **FIRST CLAIM FOR RELIEF**

18                     **(REQUEST FOR DECLARATORY RELIEF)**

19        14.     ATC incorporates by reference the allegations of paragraphs 1 through 13 as though

20  fully set forth herein.

21        15.     An actual controversy exists between ATC and Salvestrin that is within the power of

22  this Court to determine pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.

23        16.     Salvestrin asserts as follows:

24

COMPLAINT FOR DECLARATORY RELIEF

1      (a)     It has protectable and valid trademark rights in the term "Cult" for wine; and

2      (b)     That it has use-based priority over ATC's use of "Cult" because it began using the term

3  on wine in 2009 and ATC's predecessor-in-interest began using it in 2010; and

4      (c)     That ATC's use of the term "Cult" on wine creates an actionable likelihood of confusion

5  as to source, sponsorship or affiliation with Salvestrin's "Cult" label among retailers, the wine trade

6  and relevant consumers thus violating federal and state law.

7      17.     ATC asserts as follows:

8      (a)     Salvestrin has no valid trademark rights in the term "Cult" because it is a descriptive

9  term for wine and it has not acquired distinctiveness (secondary meaning); and

10     (b)     To the extent that the term "Cult" is an inherently distinctive term for wine, ATC has

11  priority through its predecessor-in-interest who began use in 2010, and any claimed use prior to that

12  time by Salvestrin was unlawful because there was no COLA for the label;  and

13     (c)     ATC's sale of wine bearing the "Cult" designation does not create an actionable

14  likelihood of confusion as to source, sponsorship or affiliation with Salvestrin's wines bearing a "Cult"

15  brand name; and,

16     (d)     Any infringement claim is barred by the statute of limitations, the doctrine of laches,

17  and the doctrine of acquiescence since Salvestrin knew of the use of the "Cult" brand name on wine by

18  the Snider Family for over a decade and did nothing to stop it, in reliance on which Summit purchased

19  the "Cult" assets from the Snider Family, and ATC purchased them from Summit.

20     18.     This Court's determination of the issues presented by the actual controversy between

21  ATC and Salvestrin will afford relief from the uncertainty, insecurity and controversy with respect to

22  the rights, status and legal relations between the parties. A declaration of the parties' respective rights

23  will settle the conflicting and disputed claims of the parties, will afford them the security of knowing

24

1    precisely what their respective rights are, and will prevent a multiplicity of actions that will arise if the

2    parties continue on their present course of action without a judgment from this Court. Declaratory relief

3    is equitable, necessary and proper under the circumstances presented by this case.

4        **WHEREFORE**, ATC respectfully requests that the Court enter judgment against Salvestrin as

5    follows:

6        1.      Declaring that:

7        (a)     Salvestrin has no valid trademark rights under federal and state law in the "Cult" brand

8    name for wines; and

9        (b)     To the extent "Cult" is inherently distinctive for wine, ATC has priority; and

10       (c)     ATC's sale of wine bearing a "Cult" brand name does not create an actionable

11   likelihood of confusion as to source, sponsorship or affiliation with Salvestrin's wines and otherwise

12   does not constitute a violation of any federal or state law; and

13       (d)     Any infringement claim is barred by the statute of limitations, the doctrine of laches and

14   the doctrine of acquiescence.

15       2.      Granting such other and further relief to ATC as may be just and proper under the

16   circumstances, including but not limited to costs of suit.

17                                          **LAW OFFICE OF PAUL W. REIDL**

18                                          By: /s/ Paul W. Reidl

19                                          Paul W. Reidl (CA Bar No. 155221)
                                            LAW OFFICE OF PAUL W. REIDL
20                                          Second Floor
                                            25 Pinehurst Lane
21   Dated: June 8, 2021                    Telephone: (650) 560-8530
                                            Email: reidl@sbcglobal.net
22

23

24

COMPLAINT FOR DECLARATORY RELIEF