PAUL W. REIDL (State Bar No. 155221)
Law Office of Paul W. Reidl
Second Floor
25 Pinehurst Lane
Half Moon Bay, CA 94019
(650) 560-8530
Email: reidl@sbcglobal.net

*Attorney for Appellation
Trading Company, LLC*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **APPELLATION TRADING COMPANY, LLC,**<br><br>Plaintiff,<br><br>v.<br><br>**SALVESTRIN WINE CO., LLC**,<br><br>Defendant. | Case No.<br><br>**COMPLAINT FOR DECLARATORY RELIEF** |

Plaintiff Appellation Trading Company, LLC, for its Complaint against Defendant Salvestrin Wine Co., LLC, alleges the following on information and belief:

**JURISDICTION AND VENUE**

1. This is an action for declaratory relief under the Lanham Act, 15 U.S. C. §1051 *et seq.,* and the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.* This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338 (a) and 2201 (a), and 15 U.S.C. § 1121. It has personal jurisdiction because both parties reside in this District. Venue properly lies within this District pursuant to 28 U.S.C. §1391. This is an intellectual property action and therefore should be assigned on a district-wide basis per Local Civil Rule 3-2(c).

## THE PARTIES

3. Plaintiff Appellation Trading Company, LLC, ("ATC") is a California limited liability corporation with its principal place of business in Napa, California. ATC is in the business of producing and distributing wines in the United States, California and this District.

4. Defendant Salvestrin Wine Co., LLC ("Salvestrin") is a California limited liability corporation with its principal place of business in St. Helena, California. Salvestrin is in the business of producing and distributing wines in the United States, California and this District.

## FACTUAL BACKGROUND

5. ATC produces a wine called "Cult." This wine is made from grapes grown in Napa Valley. The term "Cult" was first used as a brand name on a Napa Valley wine label in or about January 2010 by the Snider Family d/b/a Beau Vigne in Yountville, California. It has been used on wine continuously since that time. In August 2018, the Snider Family sold their vineyards and winery to Summit Vineyards Estate, LLC ("Summit").

6. In or about July 2011, Salvestrin began using a "Cult" designation on a Napa Valley wine. It sent a demand letter to the Snider Family in which it demanded that they cease and desist using their "Cult" brand name. They refused to do so. Salvestrin never followed-up on its threat to sue, and the Sniders (and later Summit) continued selling wine bearing a "Cult" brand name without any further objection from Salvestrin. Although the acquisition by Summit was widely publicized in the trade press and local print media, Salvestrin did not send a demand letter to the new owners.

7. On November 20, 2019, ATC purchased the "Cult" label, trade dress, and inventory from Summit. It continued selling wine labeled with the "Cult" brand name and is still doing so today.

6. Although this acquisition was widely publicized in the trade press and local print media, Salvestrin did not immediately send a demand letter to ATC. It wasn't until February 2021, over a

decade after the original demand letter to the Snider Family, when Salvestrin's trademark counsel sent a demand letter to ATC claiming that its use of the "Cult" brand name on wine constituted trademark infringement and unfair competition. He demanded that ATC immediately cease and desist sales of the label or face Federal Court litigation. He claimed that Salvestrin first used the term on wine in 2009, long before the Snider Family. In a lengthy written response, ATC explained why the claim was groundless and it refused to accede to the demand.

7. Salvestrin responded to ATC's letter by sending a second letter, this time from a trademark litigator in Silicon Valley. She reiterated Salvestrin's demand and again threated ATC with court action if it did not accede to it. Again, ATC provided a lengthy response explaining why it would not accede to the demand.

8. Last week, the principal of ATC reached out to his counterpart at Salvestrin and confirmed that Salvestrin still intended to sue over ATC's use of a "Cult" brand name for wine.

9. Not all brand names can function as trademarks. A term that describes a characteristic of wine does not function as a trademark and cannot be owned by a single producer unless it has achieved secondary meaning, i.e., the term has become uniquely and singularly associated with that producer as a result of substantially exclusive use, extensive sales, and wide-spread promotional activities.

10. The term "cult" is a descriptive term for a type of wine. A "cult" wine is a wine for which collectors, investors and enthusiastic consumers will pay high prices. Salvestrin has admitted this multiple times in its filings before the United States Patent and Trademark Office. As a descriptive term for wine, "Cult" does not inherently function as a trademark.

11. Although Salvestrin has used the brand name "Cult" for many years, so has ATC through its predecessors. The term has not acquired distinctiveness and does not have secondary

1  meaning. Salvestrin does not have the substantial exclusivity of use required to establish secondary

2  meaning. It also does not have sufficient advertising, promotional activities, and sales to have

3  established single-source identification with consumers throughout the country.

4     12. Salvestrin received a trademark registration for "Cult" in June 2020. In its application,

5  Salvestrin again admitted that "Cult" was descriptive for wine because it filed the application based on

6  a claim of acquired distinctiveness (secondary meaning) through five years of (allegedly) substantially

7  exclusive use. At the time it filed this application, however, Salvestrin knew that it did not have

8  substantially exclusive use because the Snider Family, Summit, and its successor-in-interest, ATC, had

9  been using a "Cult" brand name for over a decade. Nevertheless, it told the Patent and Trademark

10 Office (PTO) that it was the "exclusive" user of a "Cult" label for wine. This statement was false and

11 Salvestrin knew it. The PTO relied on this false statement in issuing the registration.

12     13. Although Salvestrin claims to have first used the "Cult" brand name in commerce in

13 2009, it did not receive a Certificate of Label Approval ("COLA") for a "Cult" label until July 2011.

14 The Federal Alcohol Administration Act makes it illegal to bottle or sell wine without first obtaining

15 COLA. Thus, any sales of a "Cult" label prior to July 2011 were not good use in commerce under the

16 Lanham Act. The first lawful user was the Snider Family.

17 <center>**FIRST CLAIM FOR RELIEF**</center>

18 <center>**(REQUEST FOR DECLARATORY RELIEF)**</center>

19     14. ATC incorporates by reference the allegations of paragraphs 1 through 13 as though

20 fully set forth herein.

21     15. An actual controversy exists between ATC and Salvestrin that is within the power of

22 this Court to determine pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.

23     16. Salvestrin asserts as follows:

24

(a) It has protectable and valid trademark rights in the term "Cult" for wine; and

(b) That it has use-based priority over ATC's use of "Cult" because it began using the term on wine in 2009 and ATC's predecessor-in-interest began using it in 2010; and

(c) That ATC's use of the term "Cult" on wine creates an actionable likelihood of confusion as to source, sponsorship or affiliation with Salvestrin's "Cult" label among retailers, the wine trade and relevant consumers thus violating federal and state law.

17. ATC asserts as follows:

(a) Salvestrin has no valid trademark rights in the term "Cult" because it is a descriptive term for wine and it has not acquired distinctiveness (secondary meaning); and

(b) To the extent that the term "Cult" is an inherently distinctive term for wine, ATC has priority through its predecessor-in-interest who began use in 2010, and any claimed use prior to that time by Salvestrin was unlawful because there was no COLA for the label; and

(c) ATC's sale of wine bearing the "Cult" designation does not create an actionable likelihood of confusion as to source, sponsorship or affiliation with Salvestrin's wines bearing a "Cult" brand name; and,

(d) Any infringement claim is barred by the statute of limitations, the doctrine of laches, and the doctrine of acquiescence since Salvestrin knew of the use of the "Cult" brand name on wine by the Snider Family for over a decade and did nothing to stop it, in reliance on which Summit purchased the "Cult" assets from the Snider Family, and ATC purchased them from Summit.

18. This Court's determination of the issues presented by the actual controversy between ATC and Salvestrin will afford relief from the uncertainty, insecurity and controversy with respect to the rights, status and legal relations between the parties. A declaration of the parties' respective rights will settle the conflicting and disputed claims of the parties, will afford them the security of knowing

precisely what their respective rights are, and will prevent a multiplicity of actions that will arise if the parties continue on their present course of action without a judgment from this Court. Declaratory relief is equitable, necessary and proper under the circumstances presented by this case.

**WHEREFORE**, ATC respectfully requests that the Court enter judgment against Salvestrin as follows:

1. Declaring that:

(a) Salvestrin has no valid trademark rights under federal and state law in the "Cult" brand name for wines; and

(b) To the extent "Cult" is inherently distinctive for wine, ATC has priority; and

(c) ATC's sale of wine bearing a "Cult" brand name does not create an actionable likelihood of confusion as to source, sponsorship or affiliation with Salvestrin's wines and otherwise does not constitute a violation of any federal or state law; and

(d) Any infringement claim is barred by the statute of limitations, the doctrine of laches and the doctrine of acquiescence.

2. Granting such other and further relief to ATC as may be just and proper under the circumstances, including but not limited to costs of suit.

**LAW OFFICE OF PAUL W. REIDL**

By: /s/ Paul W. Reidl

Paul W. Reidl (CA Bar No. 155221)
LAW OFFICE OF PAUL W. REIDL
Second Floor
25 Pinehurst Lane
Telephone: (650) 560-8530
Email: reidl@sbcglobal.net

Dated: June 8, 2021